In the Matter of the Estate of ALVAY DIXON, Deceased, LLOYD E. DIXON, EDITH A. BROKAW, MARGARET A. LeBEAU and CHARLOTTE P. ROSENLIEB,

*Petitioners and Respondents,*

vs.

ROSEMARY DIXON, BRYAN WHITE and FRANCES H. WHITE,

*Protestants and Appellants.*

(No. 2418; June 14th, 1949; 207 Pac. (2d) 510).

198

For the protestants and appellants, the cause was submitted upon the brief of C. A. Brimmer of Rawlins, Wyoming, and Sullivan & Sullivan of Laramie, Wyo-

ming, and oral argument by Mr. Brimmer and J. R. Sullivan.

For the petitioners and respondents, the cause was submitted upon the brief and also oral argument of J. R. Armstrong of Rawlins, Wyoming.

## OPINION

BLUME, Justice.

This is a proceeding for partial distribution of the estate of Alvy Dixon, deceased, as permitted by Section 6-2304, Wyo. Comp. St. 1945. The petition was filed by the four children of the decedent and asked only for the distribution to them of property specifically devised to them as hereinafter mentioned. Rosemary Dixon, the widow of the deceased, and Bryan White and Frances H. White, grantees of some of her interest in the estate, filed objections to such partial distribu-

tion. But the court granted the petition, setting off and distributing to each of the children a separate ranch, each of which was specifically devised to them respectively under the last will of said decedent. The widow and Bryan White and Frances H. White have appealed to this court. G. R. McConnell, Esquire, executor under the last will and testament of the deceased, filed a motion, accompanied by a learned brief, to dismiss the appeal herein on the ground that no notice of appeal was served upon him. We have thought best, however, to decide this appeal upon the merits and shall, therefore, not pass upon the motion to dismiss.

The deceased had been married twice. He left four children, one son and three daughters by his first marriage but no children by his second marriage. The children are Edith Brokaw, Lloyd Dixon, Charlotte Rosenlieb and Margaret LeBeau. Alvy Dixon died on November 27, 1944. He executed a last will and testament on February 10, 1936. In its preface, he stated as follows: "The many years I have spent in accumulating such estate with which I may be seized at the time of my demise, on Rock Creek, has caused me to have an abiding faith in the economic advantages of the district in providing security and happiness for myself in the past and I believe offers a most secure assurance of happiness to my family in the future. I have for many years looked forward to the time when my entire family would be located along Rock Creek in such a manner that they would be able to cooperate with each other in the operation of their individual ranch properties and, in addition, to enjoy the fellowship and happiness which can come only to a loving family by close association, with harmonious and sympathetic understanding of the problems of each other. I am confident my estate offers ample opportunity to provide all of the world's goods necessary for my family to accomplish my desire to provide security and

happiness for them. In making the bequests hereinafter, I make them with the above thought in mind and it is my sincere desire that each individual included herein shall, forever, bear in mind my sincere desire." The testator left specific devises to each of his four children and to his widow, each consisting of a ranch. He devised to his widow some 1400 acres of land, and in that connection stated as follows: "In making this bequest I am mindful of my beloved wife's desire to live in the house which we have planned together and which, at the execution of this instrument, I am in the process of constructing and, also, I am taking into consideration the fact that said property known as the 'Arlington Home' is peculiarly adapted for a summer resort or dude ranch and that my beloved wife is capable of operating such a business and is not sufficiently experienced in ranching to make a success thereof, and it is for that reason the above described property is specifically given to her." All of the property devised specifically as above mentioned was made subject to oil and gas rights. The property not specifically devised was left, one-fourth thereof to his widow and three-fourths in equal shares to his children. An appraisal of the property left by the testator fixes the value at approximately $212,000 with about $20,000 indebtedness. Substantially all indebtedness and expenses including inheritance taxes and estate taxes appear to be paid. There was on hand at the time of the trial in this proceeding approximately $45,000 in cash. The specific devises herein mentioned were appraised at the following sums:

| | |
|---|---|
| Rosemary Dixon | $12,828.00 |
| Edith Brokaw | 13,682.32 |
| Lloyd Dixon | 11,142.60 |
| Charlotte Rosenlieb | 10,327.80 |
| Margaret LeBeau | 15,087.00 |

These amounts were totaled in the appraisement at $62,714.38. Hence, we estimate that the value of the

specific devises consist of approximately one-third of the net value of all of the property of the estate and that accordingly there is ample property out of which the interest of the widow of the deceased may be satisfied.

Rosemary Dixon, the widow, renounced, within the time fixed by statute, the benefits given her under the will of the deceased and elected to take her one-fourth interest given her under Section 6-301, Wyo. Comp. St. 1945.

It seems that prior to the trial of this case, she conveyed to Bryan White and Frances H. White, a one-fourth interest in part of the real estate belonging to the estate; a one-twelfth interest in other portions of the real estate and all of her interests in still other real estate belonging to the estate. She did not convey any interest to them in the property specifically devised to her in the last will and testament of the decedent. It is conceded that Mrs. Dixon is entitled to her homestead right and widow's allowances in addition to a fourth of the property of the estate given her by the above statutory provisions. The court found that the widow was left less than one-fourth of the property of the testator's estate and that she had the right to renounce the will. No exception was taken to that finding.

Counsel for the children contend that it would be unjust not to permit the latter to take the specific devises to them unaffected by any claim of the widow. He states among other things: "Alvy Dixon, the deceased, had accumulated these various ranches over a long period of time. They are best divisible only as he divided them in his will. He divided them fairly, equitably and evenly so as to give to each of his heirs approximately the same amount of pasture, meadow and grazing land. To take one-fourth out of each of them

would ruin all five ranches." Counsel for the appellants on the other hand argue that the widow took a one-fourth interest in each and every parcel of the property of the deceased and that this one-fourth should be set off to her in specie—kind. They argue that either the widow must be given an undivided one-fourth in every parcel of realty and personalty or else that the assets of the estate should be sold and the proceeds divided between the widow and the takers under the will; they state that in no other way can the property be divided equitably and justly between the widow and the children of the deceased. They admit, however, that the statute applicable herein hardly contemplates the sale of all of the property. We believe that to be true. We can hardly think that the statute intended that the widow should have the highest price obtainable for her interest, run up perhaps by an interloper able to do so, but that, on the contrary, only the fair and actual value of the property was in contemplation in connection with the distribution of the estate. So in the remaining portion of this opinion, we shall only consider the first part of the contention of the appellants herein.

The precise question before us is as to whether or not specific devises may, over the objection of the widow and without any objection upon the part of the other heirs, be carried into effect when the remainder of the property of the estate is amply sufficient to satisfy the interest of the widow under the statute either in property or in cash. The correlative of that would be whether or not the widow has the absolute right under like condition of the estate to satisfy her claim either in whole or in part out of the property specifically devised to the children. The point before us has been argued upon its merits. No question of any kind relating to procedure has been raised. So in order to discuss the subject before us in its fullest scope, we shall consider the case before us as one in which the

trial court had plenary jurisdiction to decide all questions of law and equity arising herein.

Section 6-301, Wyo. Comp. St. 1945, makes specific provisions for a case in which a testator or testatrix has been married twice, has children by a first spouse and none by a second spouse who survives him or her. The statute, leaving out portions not necessary to be set out, is as follows: "provided, further, that any married person leaving surviving him or her a child or children by any previous marriage, * * * and leaving surviving him or her no child the fruit of the marriage existing at the time of the death of such married person, * * * may by will to others than the surviving spouse dispose of not exceeding three-fourths of the property of such married person remaining after the payment of his or her debts. * * * if a deceased spouse shall by will deprive the surviving spouse of more than three-fourths of the property of such deceased spouse remaining after the payment of his or her debts, it shall be optional with the surviving spouse, * * * to elect to take one-fourth of the estate, real and personal, of the deceased spouse in lieu of the provision for such surviving spouse as made in the will of the deceased spouse." We shall hereafter ordinarily refer only to a testator and his spouse in order to avoid circumlocution, although our statute applies equally to a testatrix and her surviving spouse.

The first clause of the statute in effect provides that a testator must leave one-fourth of his property to his surviving spouse. It is conceivable that he might leave property each and every portion of which is equal in every respect to each and every other, but that would be an exception and may be ignored for practical purposes. Ordinarily the several portions of property would be different from others in many respects and it would, practically speaking, be an impossibility for a

testator to determine whether or not he has complied
with the statutes except by the method of valuation.
Even that method is perilous at best, since his judg-
ment of values may not be accepted by others. Still
the statute gives him the right to exclude his widow
from the remainder of the property by leaving her
one-fourth, and since that can be made effectual, if at
all, only by the process of valuation, it would seem to
be clear that the statute provides that the testator
must leave his widow one-fourth of his property in
value. Hence the contention seems altogether reason-
able that the same rule of interpretation should be
applied in construing the subsequent portion of the
statute which provides for the contingency when the
testator fails to leave to his widow the specified amount
of property. The phrase of the statute, "one-fourth of
the estate, real and personal," undoubtedly determines
the quantity of property which the widow is to receive,
but the statute is silent as to how that one-fourth in
value is to be assigned and satisfied. The rules of con-
struction cited to us by counsel for appellants do not,
so far as we can see, throw any light on the question.
So we shall turn to see what other courts have thought
about it and find, as is not infrequently true in con-
nection with other points, that no uniform system
prevails.

There is no doubt that the interest of the surviving
spouse, under our statute after renunciation of the
benefits given by a will, is a charge upon each and
every parcel of property not necessary for the payment
of debts and expenses of which the testator died seized
until that interest is satisfied. It is an interest in all
of the property and is, of course, until satisfied, an
undivided interest. In Latta vs. Brown, 96 Tenn. 343,
34 S. W. 417, 31 L. R. A. 840, the court stated: "The
holding and reasoning of the court of chancery appeals
is that, when the widow dissented, her right of dower

attached and became an incumberance on all the testator's lands, no matter to whom devised; and that it 'hovered' over all of them as an incumbrance until assignment made." The question as to the manner in which satisfaction of that incumbrance must be made is another question. That is to say, the query is whether the interest is merely a charge upon all the property, which lasts only "until assignment made," and may be satisfied out of part thereof or whether the interest is greater. Counsel for appellants claim the latter. They say the widow had an undivided interest in each and every parcel of property. By this they evidently mean that such interest is absolute and unqualified, one (though counsel do not use that language) which in connection with real estate would be called an interest in fee or in fee simple.

The question thus raised is one of first impression in this state and on account of its importance, we have made as exhaustive examination thereof as possible. We shall not attempt to reconcile or harmonize the statements in the various cases. We shall merely attempt to clear away, if we can, some of the underbrush so as to give a healthy growth to what remains. Our predecessor in doing that has been Elbridge D. Phelps in his exhaustive articles in 37 Mich. Law Rev. 236, et seq., and 37 Mich. Law Rev. 401, et seq. Counsel for appellant rely upon the following cases: Logan vs. Logan, 11 Colo. 44, 17 Pac. 99; Lilly vs. Menke, 143 Mo. 137, 44 S. W. 730; In Re Povey's Estate, 271 Mich. 627, 261 N. W. 98; In Re Topazio's Estate, 175 Misc. 132, 22 N. Y. S. 2d 847; Borchers vs. Borchers, 352 Mo. 601, 179 S. W. 2d 8; Tom vs. Tom, 107 Ind. App. 599, 26 N. E. 2d 410; Schaffenacker vs. Beil, 320 Ill. 31, 150 N. E. 333; Rusing vs. Rusing, 25 Ind. 63. In Re Taylor's Estate, 213 Minn. 509, 7 N. W. 2d 320; Gordon vs. James, 86 Miss. 719, 39 So. 18, 1 L. R. A. N. S. 461. Several of these cases hold that the surviving

spouse who renounced the will, becomes vested, in the proper proportion, with a title in fee, or fee simple, in all the real property left by the testator. Other cases use different expressions. Thus in the case of In Re Povey's Estate the court said that the surviving spouse had an interest in each and every parcel of property left by the testator. That, of course, is true "until assignment made." The question is whether that is still true thereafter. In Gordon vs. James, 86 Miss. 719, 39 So. 18, 1 L. R. A. N. S. 461, the court stated as follows:

"In the instant case, Mrs. Carrie W. James, by her act of renunciation, became entitled to a one-half interest in the real and personal estate of her deceased husband as if he had been an intestate. Therefore, when all of the debts of the estate have been fully paid, she will be entitled to her distributive share of one half of all the residue of the personal property, and will become a co-tenant with each devisee, and own a half interest in each and every parcel of real estate specifically devised by her deceased husband." Similar language was used in the case of In Re Topazio's Estate, supra. But that meant little, so far as having a bearing in the case at bar is concerned, for at the end of that statement the court uses this language: "Equivalently stated, the intestate share of the electing spouse constitutes a primary charge upon the entire net estate." Some of the foregoing cases are not of any decisive influence herein for the reason that the real contest therein was not with the surviving spouse but was between the other devisees and legatees of the testator, so that while the decisions were undoubtedly correct in these cases as to the quantity of the property taken, the statements as to kind of the property taken by the surviving spouse—that is to say that she had an unqualified interest in every species of property left by the testator—were very nearly gratuitous and almost, if not quite, obiter dicta. Take for instance, In Re

Povey's Estate, supra. The pivotal question was as to whether the estate left to the residuary legatee should be taken rather than the property left to one who was given a specific devise of real property to satisfy the widow's share. A similar situation existed in the case of In Re Taylor's Estate, 213 Minn. 509, 7 N. W. 2d 320, in which according to the syllabus, the court held:

"A childless widow, who renounced her husband's will and elected to take her statutory interest, was entitled to an undivided one-half interest of all the realty of the testator even though devised to others and her statutory share could not be satisfied out of the testator's personalty so as to permit the devises of realty to stand." In that case the statute provided that the surviving spouse renouncing the will should have one-third of the personal property left by the testator and an undivided one-third of all real property. The court, following an earlier case, thought there was some distinction made in the statute between the provision relating to personal property and that relating to real property, a distinction which does not exist in the statute of Wyoming. The real contest in that case was between a specific devisee of a farm and the residuary legatee, just as In Re Povey's Estate, and justice in the case would have been subserved as well if the court had merely held that the person benefited by a specific devise was compelled to contribute his just share to satisfy the just claim of the widow who renounced the will as well as the residuary devisee and legatee.

The truth is that the specific question involved in the case at bar was not involved in any of the cases heretofore cited. In fact, as stated by the annotator in 99 A. L. R. 1189, the precise limitations to the interference of the courts when a surviving spouse renounces a will by way of rearrangement of the distribution of the decedent's estate, do not appear to have been much

discussed. Most of the contests revolved around the question whether a specific devisee or legatee is entitled to contribution from other devisees or legatees in order that he might be compensated for a loss by reason of the renunciation of the will.

Counsel for appellant argue that it would be unjust to hold that the specific devises to the children of the testator should stand, since in that event, these devisees could, for instance, hold their land and speculate on the increase of the value thereof while the widow in this case would have no such chance. The argument would seem to be without a great deal of force particularly in view of the fact that the widow herself, had a devise of some 1400 acres of land and could, had she accepted the benefits under the will, have speculated on the rise in value of that property. In any event looking at the situation from a practical standpoint, even if she were granted an undivided one-fourth interest in fee in the real property left by the testator as her distributive share of the estate, her cotenancy might be of very short duration, and therefore illusory. No person is compelled to remain a cotenant of another. That was the rule of the Roman Law. Code Justinian 3, 37, 5. That, with few exceptions, is the rule of the Common Law. 47 C. J. 288. And that is the rule under our statute. Section 3-6901 and Section 6-2317, Wyo. Comp. St. 1945.

We must now turn to cases which shed a different light upon the question before us than those heretofore cited. As a preface, however, let us say this: If a widow in this case had an absolute interest in every piece of property of the estate, that must be true as to personal property as well as to real property. If that interest must be turned over to her in kind, that must be true —after debts and expenses are paid—in connection with every parcel of personal property as well as in

connection with every parcel of real property. Thus, if a testator would wish to bequeath to one of his children a valuable heirloom so that it might be transmitted to his remotest decendants, he could not do so but would be compelled to leave an interest therein to his widow to be subjected to an action in partition, and, thus to become perchance, in the fortunes of that action, the property of the widow who might be a complete stranger in blood to his children. Did the legislature intend such consequences as that? In Paschal vs. Acklin, 27 Tex. 174, 196, the court construed a provision which forbade a parent to deprive his children by will of more than one-fourth of his estate. In other words, he was compelled to leave to his children three-fourths of his estate, just as in this case, the testator was compelled to leave one-fourth to his widow. The court commenting on that provision stated as follows:

"The only limitation upon the right of the owner to dispose of his property by will has reference to the proportional part of the value of his estate. In other respects his discretion is unshackled. * * * In the nature of things, it is impossible that a part of each specific article of property should be allotted to the children. To deprive the testator of the privilege of selecting the item of property for bequest, would often, if not generally, take from him the incentive for making it. The object of the law was to secure to children a just and reasonable portion of their parents' estate. If they received the portion to which the law declared they were entitled, it was immaterial where or *in what they received it.*" (Italics supplied).

This statement is as terse, definite and decisive as any statement can be made, and if we accept it, it would, we think, follow that the action of the trial court herein should be affirmed, provided of course that the widow is hereafter allotted her proper proportion of the estate. Utah and Kansas, too, have a statutory provision that a married man shall not devise

away from his wife more than a certain portion of his legal or equitable estate, but the statutes at the same time provide that this proportion in value of the estate shall be set off to the widow in fee simple. In Re Little's Estate, 22 Utah 204, 61 Pac. 899; Kansas General Statute 1901, Sections 2510 and 7972. See also Smith vs. Zuckemeyer, 53 Ia. 14. Cases from these states accordingly would not be in point herein. For a similar reason Fletcher vs. Cotton, 81 N. H. 243, 123 Atl. 889, cited to us, is not in point herein.

Not all the courts have agreed that a surviving spouse, by renouncing a will, is entitled to an undivided interest in fee in the property left by the testator. That theory was rejected in the case of Shearn vs. Shearn, 60 Ohio App. 317, 21 N. E. 2d 133. As already noted in the Tennessee case of Latta vs. Brown, the court considered the interest of the widow, which was a dower right, as an incumbrance which "hovers" over all the property of the estate, but also held that it did not become a free-hold estate until dower was assigned. In the case of Dunlap vs. McCloud, 84 Ohio St. 272, 95 N. E. 774, 35 L. R. A. N. S. 851, it appears that the widow renounced a will and elected to take dower. It was held that if there was land enough to set off the dower without interfering with land specifically devised for life, it should be done and that it was error to direct the dower be set off in part of the lands so specifically devised. That rule, too, seems to be approved in Lilly vs. Menke, 143 Mo. 137 at page 149. In the case of Gallagher's Appeal, 87 Pa. St. 200, it appears that a testator devised certain land to his sister and after providing for his widow, left the residuary estate to his nephews and nieces. The widow refused to take under the will and elected instead to take her interest under the intestate laws of the state. It was held that the sister was entitled to have the assets marshaled and a sum set apart sufficient to relieve the

land devised to her from its burden of the widow's interest. In Franklin vs. Hastings, 253 Ill. 46, 97 N. E. 265, it appears that a surviving husband elected not to take under the will of his wife and that he thereupon became entitled to one-half of the real and personal estate after the payment of debts. It was held, however, that inasmuch as the testatrix devised specific realty for a library building, his interest should be assigned out of property other than that devised for the library building. In the case of Shannon vs. Eno, 120 Conn. 77, 179 Atl. 479, 484, the court said: "Again, the premises in question are specifically devised in the will. The general rule is that, unless the will indicates a contrary intention, in satisfying debts and charges against an estate, land specifically devised is the last property to be taken * * *. So where an estate is insufficient to discharge all legacies and devises, general legacies abate before specific devises or legacies * * * . On like grounds, where a husband elects to take his statutory share of an estate in lieu of the provisions made for him in the will of his wife, general legacies are first to be taken to satisfy that share, before specific devises or legacies are to be disturbed * * *." A number of cases are cited. We do not need to determine the question as to whether specific devises are preferred to others, (a question in dispute), but the case clearly shows, in view of the fact that specific devises must be left in tact, if possible, that no estate in fee existed in every parcel of the property of the estate.

We have still to consider a general rule which plays or should play a not unimportant part in solving the question before us. It is stated in 57 Am. Jurisprudence 1054, as follows: "It is generally recognized that while an election by a surviving spouse against the will of the deceased spouse must necessarily disrupt the testator's scheme as to the distribution of his estate, at least to some extent, it is the duty of the court to carry

out such scheme with respect to the rights of the other beneficiaries named in the will as nearly as is possible in accordance with the testator's intentions." In 69 C. J. 1142, it is said: "A taking against the will by a surviving spouse does not operate to render the estate intestate, and is not allowed to break the testamentary plan further than is absolutely necessary." Page On Wills, Lifetime Edition, Volume 4, Page 87, states as follows: "The election to take against the will defeats the intention of testator in part: and the court will endeavor to ascertain his primary intention and to carry it into effect as far as it can be done with the minimum disturbance of the general plan of the will." Denny vs. Searles, 150 Va. 701, 143, S. E. 484, speaking of the effect of the renouncement of a will by a widow states:

" 'The general rule' in such case 'is that the election of a widow to take against her husband's will does not invalidate the will as to devises and bequests to others, except so far as the property given thereby may be necessary to satisfy the claim of the widow under her election, and hence it is the duty of the court to protect the rights of others claiming under the will, and to carry out the provisions thereof, if not in the precise mode directed by the testator, yet in as near that mode as possible." That principle is also stated by the annotator in Ann. Cas. 1913 E, Page 417, where a number of cases are cited. The cases stating this general rule are very numerous and are collected in the Decennial Digest under Wills, Sections 801 and 802.

In the case of In Re France's Estate, 352 Pa. 522, 43 Atl. 2d 139, the court said: "The Orphans' Court, being a court of equity, is not bound to a rigid formula in determining the effect of the widow's election. Each case is decided 'as equity and good conscience require, so that exact justice, as nearly as this is possible in human affairs, may be done to all parties in interest.'

In Re Lonergan's Estate, 303 Pa. at page 147, 154 Atl. at page 389. The disarrangement of testator's plan of distribution of his estate must be reduced to a minimum and his general scheme followed as closely as possible."

These rules apply of course primarily to that portion of a testator's estate over which he had the right of disposition. He had no power to diminish the rights which the statute gives his surviving spouse. Thus, it fixes the quantity or amount of the estate which she is to take and the testator was powerless to infringe upon it in any way. But that is as far as our legislation goes.

"Renouncement does not affect the validity of the will; it affects only the amount of property which the parties receive." Edwards vs. Edwards, 193 Miss. 889, 11 So. 2d 450, 451. The statute, as heretofore stated, is silent as to how that amount is to be assigned or satisfied and we perceive no reason why the foregoing ruler should not apply insofar as may be just and proper. Here another factor comes into play. The testator is granted the power by the statute to dispose, by will, of three-fourths of his property. That power is absolute, just as absolute as the right of the surviving spouse to receive one-fourth of his net estate. These rights must be construed in pari materia. Lilly vs. Menke, 143 Mo. 137, 44 S. W. 730. The conclusion is inevitable that an adjustment of these rights is necessary. And just as rules of equity prevail in partition and the adjustments to be made therein, (Pomeroy's Equity, 5th Ed., Sec. 1387), and just as in marshaling assets, rules of equity are applied (55 C. J. S. 956), so the adjustments to be made between the two rights above mentioned must necessarily be made in accordance with the principles and rules of equity and justice. We have already cited a number of cases which reject the theory of an estate in fee in the surviving widow but which permitted a

specific devise to stand if possible. They made a practical application of the rule that the testator's will should be carried into effect as nearly as it could be done in justice to all. We can see no reason why a like action on the part of the court in this case should not be upheld if not unjust. For other cases which disturb the incumbrance of a surviving spouse hovering over specific property so as to uphold the testator's will, see Virginia-Carolina Chemical Co. vs. Ward, 81 Fla. 358, 88 So. 125 and Ruh's Executor's vs. Ruh, 270 Ky. 792, 110 S. W. 2d 1097. In the first of these cases, the syllabus by the court states as follows: "When a widow elects to take a child's part in her deceased husband's testate estate, such election repudiates the special provisions in such will for her benefit, but does not annul or repudiate the provisions of such will specially authorizing, empowering, or directing the executors named in such will to sell and convey specific property, though such election may entitle her to her child's part in the proceeds of such sale." In the second of these cases, the widow renounced the will and became entitled to an estate for her life in one-third of her husband's realty. The will provided that the real property should be sold, consequently working a conversion of the real into personal property. The court said: "Under the above principle, the four children of testator and his grandchild, * * * come into immediate enjoyment of the proceeds of testator's realty, subject to the widow's life estate in one-third thereof, and by virtue of testator's direction in said will to sell the said realty on the death of his widow, and she having renounced the same, the said devisees are entitled to have the realty sold at once, as if she were dead, and to have the proceeds, after deducting the widow's statutory interest, divided among themselves." (See, however, Cunningham's Estate, 137 Pa. 621, 20 Atl. 714).

It may not be without interest, before closing, to refer to a comparatively recent statute of the State of New York, relating to the disposition of an estate when the surviving spouse renounces the will. See Cahill's Consolidated Laws of New York, 1929 Supplement, page 94. That statute in part provides: "Where the aggregate of the provisions under the will for the benefit of the surviving spouse, * * * is less than the intestate share, the surviving spouse shall have the limited right to elect to take the difference between such aggregate and the amount of the intestate share, and the terms of the will shall otherwise remain effective." It may be noted that the statute attempts to carry into effect the general rule that the testator's will shall be upheld as nearly as possible. Phelps, in his article in 37 Mich. Law Rev. 428-429, states that the solution in such case adopted by the New York statute, is one of the best and that this statute was evolved after much study and investigation under the leadership of Surrogate Foley. It has been held in a number of cases construing this statute that the property given to the surviving spouse must first be applied in satisfaction of his or her elective share and that, if not sufficient, it must be made up from the balance of the estate. In Re Garlock's Will, 252 App. Div. 419, 299 N. Y. S. 516; Matter of Curley's Estate, 160 Misc. 844, 290 N. Y. S. 822; In Re Ferrara's Estate, 165 Misc. 900, 1 N. Y. S. 2d 900, 903; In Re Levy's Will, 171 Misc. 431, 12 N. Y. S. 2d 799; In Re Fagan's Estate, 84 N. Y. S. 2d 558. Our statute does not require the adoption of a course quite so definite and certain. As heretofore stated, the fundamental and guiding rule under our statute is that the rights of the testator and the rights of the surviving spouse must be construed in pari materia and the interests adjusted according to justice and equity. Under that rule, it might possibly happen at times that specific devises made by a testator should

not stand unimpaired. It would depend on the circumstances. In considering the rights of the surviving widow, the courts should take into consideration her sex, her age, her health, her past experience, her station in life, and all other facts and circumstances which would have a bearing in determining what would, in the light of her and the testator's rights, be just in the assignment of her interest in the estate left by the testator. In the case at bar, we see no reason why we should disagree with the trial court in letting the specific devises to the children of the testator stand unimpaired. We think that the conveyances of an interest therein by the widow to Bryan White and Frances H. White are ineffective, and that the judgment of the trial court herein should be affirmed. It is so ordered.

RINER, C. J. and KIMBALL, J., concur.