In the Matter of the Estate of ALVY DIXON, Deceased. ROSEMARY DIXON, Widow of Alvy Dixon, Deceased, and BRYAN WHITE and FRANCES WHITE, as Grantees of said ROSEMARY DIXON.

*Appellants,*

vs.

LLOYD E. DIXON, EDITH A. BROKAW, MARGARET A. LeBEAU and CHARLOTTE P. ROSENLIEB, Heir at Law of Alvy Dixon, Deceased, and Devisees and Legatees under the Last Will and Testament of Alvy Dixon, Deceased,

*Respondents,*

G. R. McCONNELL, Executor of the Last Will and Testament of Alvy Dixon, Deceased,

*Respondent.*

In the Matter of the Estate of ALVY DIXON, Deceased.

LLOYD E. DIXON, EDITH A. BROKAW, MARGARET A. LeBEAU and CHARLOTTE P. ROSENLIEB, Heirs at Law of Alvy Dixon, Deceased, and Devisees and Legatees under the Last Will and Testament of Alv yDixon, Deceased,

*Appellants,*

vs.

ROSEMARY DIXON, Widow of Alvy Dixon, Deceased, and BRYAN WHITE and FRANCES WHITE, as Grantees of said ROSEMARY DIXON,

*Respondents,*

G. R. McCONNELL, Executor of the Last Will and Testament of Alvy Dixon, Deceased,

*Respondent.*

(Nos. 2645 and 2646; December 28th, 1954; 278 Pac. (2d) 258)

For the appellants in case No. 2645 and the respondents in case No. 2646 the causes were submitted upon the brief of Brimmer & Brimmer of Rawlins, Wyoming, and Sullivan & Sullivan of Laramie, Wyoming, and oral argument by Clarence A. Brimmer, Jr.

For the respondents in case No. 2645 and the appellants in case No. 2646 the causes were submitted upon the brief of J. R. Armstrong of Rawlins, Wyoming, and K. W. Keldsen of Rawlins, Wyoming, and oral argument by Mr. Armstrong.

The executor, G. R. McConnell of Laramie, Wyoming, appeared pro se in oral argument.

## OPINION

BLUME, Chief Justice.

This is an appeal from a decree of final distribution in the estate of Alvy Dixon, deceased. The appeal has been taken both on the part of the children of Alvy Dixon as well as by Rosemary Dixon, his widow, and Bryan White, a transferee of Rosemary Dixon, to part of the interest which the widow has in the estate. Alvy Dixon died on November 27, 1944. He left surviving him four children, namely, Edith Brokaw, Lloyd Dixon, Charlotte P. Rosenlieb and Margaret LeBeau. These children were children by his first wife. He also left surviving him Rosemary Dixon, who had been his second wife and she inherited an interest in the estate of Alvy Dixon pursuant to § 6-301, Wyoming Compiled Statutes, 1945, which in substance provides that where a testator is survived by children of his first marriage and leaves a widow who had been his second wife, the widow takes one-fourth of the net estate. The statute is set out in the case of In re Dixon's Estate, 66 Wyo. 197, 207 P. 2d. 510, 512. The testator left a will in which he devised specific pieces of land to each of his children as well as a specific piece of land to his widow. The latter refused to take under the will pursuant to the statute above mentioned and the court held she was entitled to do so, inasmuch as the widow had not been left one-fourth of the net estate of the deceased. A partial distribution has heretofore been made in the estate of the deceased in that the specific pieces of land which were devised to each of the children of the testator were set off to them. The widow objected to this partial distribution contending that she had an interest in each and every piece of land which the testator left

at the time of his death. We held in the case above mentioned that the testator was authorized to give and devise specific pieces of land to each of his children, provided that the balance of the estate was sufficient to leave the widow the one-fourth interest to which she was entitled under the statute.

The present case involves the question of final distribution of the estate pursuant to a petition on the part of the widow and her transferees filed in the court on April 8, 1952. A hearing on the final distribution was had and a decree was entered by the trial court on September 11, 1953. In that decree the court distributed to the widow in Item A a tract specifically devised to her by the testator in a will; in Item B the court distributed to her one-fourth interest in a tract belonging to the estate known as the Murray Land; in Item C the court distributed to her a one-fourth interest in the oil and gas lease and a one-fourth interest to all mineral rights owned by Alvy Dixon at the time of his death; in Item D the court distributed to her one-fourth interest in all personal property, accounts receiveable, bonds, stocks, cash and so forth; in Item E the court distributed to her one-fourth of the net profit of the estate during the period of the administration; in Item F, a one-fourth interest in the net appraised value of the estate plus one-fourth of the net profits above mentioned, less Items A. B and C heretofore mentioned. It also distributed to her some household goods valued at $375 and a homestead right of $2,500 in cash. The balance of the property was distributed to the children of testator. The objections which were made to this final distribution will be discussed in detail.

1. It is contended by the children of the deceased that the widow was entitled to have distributed to her only cash instead of specific property. The rule contended

for by counsel for the children is a part of the question as to what is the effect of the dissent of the widow from the will. That subject divides itself into two parts; (1) The effect upon the other legatees or devisees under the will, and (2) The effect upon the rights of the widow herself. We shall deal first with part one.

Counsel for the children cite us in the first place to 4 Page on Wills, § 1347, where the author stated: "If a right is given in place of that which testator attempts to give to another, the doctrine of election applies; and the beneficiary can not claim the gift under the will, and at the same time, claim his property or interest therein against the will." Counsel overlook the fact that here the author is dealing with the question as stated by him; "Much more frequently testator attempts to dispose of property *which belongs to another*, or give property in which another has an interest, free from such interest." (Italics supplied) Take the case cited by the author under the first of these quotations, namely, First Nat. Bank & Trust Co. in Macon v. Roberts, 187 Ga. 472, 1 S.E. 2d 12, 17. There the court said: "The doctrine of election as applied to wills, * * *, against one claiming inconsistent benefits, arises when the testator 'has attempted to give *property not his own*, and has given a benefit to a person to whom *that property belongs*,' in which case 'the devisee or legatee shall elect either to take under or against the will.'" (Italics are court's own.) The first part of the annotation in 5 A.L.R. 1628 and 99 A.L.R. 230 deals with the same subject. It is quite clear these authorities are not in point in view of the fact that the testator in this case did not attempt to dispose of any property except his own.

Counsel for the children also appeal to the rule that if the widow dissents, the property given to her by the will is sequestered to compensate those beneficiaries

under the will who have been disappointed in their gifts because of the widow's election. The subject is dealt with in 57 Am.Jur. 1057, § 1552 and preceding sections; 2 Pomeroy's Equity Jurisprudence, 5th Ed., § 517 and subsequent sections; annotation in 99 A.L.R. 231 and subsequent pages. This rule applies, not to cut down the interest of the surviving spouse under the statute, but, in the main, to adjust the rights of the remaining legatees or devisees inter se, so as to carry out the provisions of the will as nearly as possible. It is applied most frequently when the surviving spouse has rejected the life estate, or has elected to take dower instead of accepting the provisions of the will. No case has been cited in which the rule is applicable in a case such as that before us. There is here no disappointed legatee or devisee who is entitled to make up any loss by reason of the election of the widow. If the widow's right under the statute is greater, as perhaps is true here to a slight extent, than that which she takes under the will, someone must make up the loss and that loss cannot be compensated considering the other legatees and devisees as a whole. Of course, if it should appear from the will that a gift to a particular legatee or devisee should be unimpaired by reason of the election of the widow to take her statutory share, such provision would be given effect by the court. 57 Am.Jur. § 1551, p. 1056. No specific mention of that matter appears in the will in question here and since the children of the testator have been given an equal part in three-fourths of the estate, aside from the lands specifically devised, it is clear that the loss occasioned by the widow's election must fall upon them equally. They cannot escape that loss. There is no room for compensation to them and an adjustment of property inter se does not arise in this case.

Nor is the question of renounced property of any

248

importance here. True, as counsel say and as is universally held, when the widow renounces the property given her, she cannot take *under the will*. But that does not mean she renounced her interest in the property of the testator which is given her by the statute. On the contrary, she has an undivided one-fourth interest therein, the right hovering over all of the property until this one-fourth interest is properly assigned to her as we pointed out In re Dixon's Estate, supra. The greatest objection herein appears to be that the widow was assigned, as part of the one-fourth interest, the land devised to her by the will. She at least did not renounce her one-fourth interest in that land, so that at least an assignment to her of that interest therein would not be improper. Was it improper to assign her all of it? So we come to the second part of the question above mentioned, namely, what are the rights of the widow when she dissents from the will?

It is contended as already stated that the widow should have been distributed cash and cash only. However, if she can be said to have renounced anything at all, why can it not be said, as in a case such as before us, that she renounced her interest in the cash of the testator and personal property which could be turned into cash just as much as her interest in anything else? It would seem the question answers itself.

It may be the court had a right not to give the land to the widow, provided no injury arose therefrom and sufficient property was left to satisfy the widow's one-fourth interest, which seems to be true here. Suppose, as in a case such as before us, the cash and other personal property available for distribution was not sufficient to satisfy her one-fourth interest and suppose further that the interest could not be satisfied except by resorting to the land specifically devised to her. It is quite clear that in that event the court would not

alone have had the right, but it would have been its duty to set this land off to her. This shows, that under some circumstances at least, the land devised to her and once rejected by the widow, may be set off to her as her portion of the estate. Why not here?

There are but few cases under statutes like ours that have abolished dower that are directly in point herein, aside from cases in New York. We pointed out In re Dixon's Estate, supra, that the people in that state, after much consideration as to what is just in a situation such as before us, arrived at the conclusion embodied in a statute, that when the surviving spouse dissents from the will, the property given to such surviving spouse in the will must first be applied to satisfy her statutory share. We cited a number of cases. 4 Page on Wills, Lifetime Edition, has adopted that rule as the proper one and states in section 1391: "Where he (the beneficiary) is entitled to a certain share of the testator's property, it is ordinarily taken from the entire estate rather than from any particular portion, although the property renounced is first alloted for such purpose." The New York rule was adopted by a probate court of Ohio in the absence of a statute. It is stated in Citizens National Bank v. Linn, 7 Ohio Supp. 192, 22 Ohio Opinions 195, 197, as follows: "Unless a will provides otherwise, the amount necessary to compensate a surviving spouse who elects not to take under a testator's will must be taken from (a) renounced devises and bequests, (b) the residue, (c) general legacies, and (d) specific and demonstrative legacies and devises; *in the order named.*" (Italics are ours.) Close, too, in point is Wachovia Bank & Trust Co. v. Waddell, 234 N.C. 454, 67 S.E. 2d. 651, 657, where the court stated: "That portion of the estate devised to her (the widow) which she renounced becomes a part of

the residuum out of which she is first to have her share as provided by law, * * *."

As we stated In re Dixon's Estate, supra, it would seem impossible to determine as to whether or not the widow has been left the proper share of the estate except by the process of valuation. That merely determines the quantity and not the quality. It does not mean, as counsel for testator's children seem to think that she must necessarily be paid in cash. Nor did we so hold. On the contrary, we distinctly said in that case (66 Wyo. 197, 218, 207 P. 2d. 510, 517) that the statute "fixes the quantity or amount of the estate which she is to take and the testator was powerless to infringe upon it in any way. But that is as far as our legislation goes." A question similar to that in the case at bar arose in Barlow v. Winters Nat. Bank & Trust Co., 145 Ohio St. 270, 61 N.E. 2d. 603, 608, 160 A.L.R. 423, in which the court held the widow was entitled to her proper proportion of the net estate and not necessarily in money, the court stating among other things: "Hence (in the statute), there is nothing to indicate that the surviving spouse shall be paid a distributive share in money." Neither does our statute say that she must be paid in cash.

Quite persuasive herein is the policy discussed In re Dixon's Estate, supra, that the provisions of the will should be disturbed as little as possible when the surviving spouse elects to take under the statute. There is no reason why that policy should not be applied when it comes to the assignment or allotment of the widow's share. Thus it is said in Shannon v. Eno, 120 Conn. 77, 179 A. 479, 484: "Where a husband elects to take a statutory share in lieu of provisions made for him by will, in setting off to him that share, the intent of the testatrix must be as little disturbed as is possible." Numerous cases are cited. It is quite apparent that the

trial court's decree complies with the rule as nearly as possible. That rule is eminently just, at least in cases involving children of a testator and a second wife, under a statute such as we have. The trial court adopted that policy and rule, and its action in that respect must be upheld.

It is contended by counsel for testator's children that since Mrs. Dixon conveyed her interest in part or in all of the property in the estate, she should be paid off in cash. Bryan White, however, who is one of the transferees, may simply hold the property in trust for her, she choosing not to hold it in her own name and we have been unable to see that her transfer to White should effect her right of having her interest distributed in the manner effected by the trial court.

2. It is contended by counsel for the widow and Byran White that she should have been allotted a greater proportion in the Murray ranch rather than personal property. It is quite apparent, however, in view of what we have said, that there is no merit in that contention and it must be overruled.

3. We shall next consider the objection made by the widow in this case in reference to her widow's allowance. The testator died November 27, 1944. She was paid the sum of $150 per month up to March 1952. The only order made by the trial court in connection with her allowance was on March 10, 1945, allowing her the foregoing sum. The inventory in the estate was filed on June 8, 1945. It is contended by counsel for the testator's children that the order made on March 10, 1945, expired when the inventory was filed and that, in any event, a widow's allowance cannot be made for more that a reasonable time during which the estate may be settled. The court found that she had been paid the sum of $12,150 (apparently from the death of the tes-

tator) and in the decree of final distribution, made the following order: "It is further ordered and adjudged that Rosemary Dixon be granted a widow's allowance of $150.00 per month for 18 months ONLY following the death of Alvy Dixon, and that the Executor shall deduct from such sums as may be due to her hereunder the overplus of the sum she has been paid, being the sum of $9,450.00 ($12,150.00 less $2,700.00), together with interest at 7% per annum in the sum of $2,211.95, making in all the sum of $11,661.95."

Exception is taken by the widow to this order, not only in allowing the widow's allowance for only 18 months, but also as to the interest mentioned in the order.

The Wyoming Compiled Statutes, 1945, applicable herein are as follows:

6-1501. "When a person dies leaving a husband, widow or minor children, the husband, widow or minor children, until letters are granted and the inventory is returned, are entitled to remain in possession of the homestead, and of all the wearing apparel of the family, and of all the household furniture of the decedent, and such widow or minor children are also entitled to a reasonable provision for their support, to be allowed by the court, a judge or commissioner thereof."
6-1503. "Allowances made under the provisions of this article, must be paid in preference to all other charges, except funeral expenses and cost of administration; and any such allowance, whenever made, may in the discretion of the court or judge, take effect from the death of the decedent. The provisions of this section shall not be construed so as to invalidate any mortgage or lien of record against decedent's property."

These sections were taken from California so that we are inclined to adopt the construction which the courts in that state have put upon these statutes. It was held In re Bell's Estate, 142 Cal. 79, 75 P. 679; In re Lux's

Estate, 100 Cal. 593, 35 P. 341; and Crew v. Pratt, 119 Cal. 131, 51 P. 44, that the allowance made under § 6-1501, supra, is temporary, awaiting the time when the inventory is returned so that the court may thereafter act with better understanding and that the order, made before the return of the inventory, expires with that return notwithstanding the fact that it recites that it shall be in effect until the further order of the court. The California court also held in In re Lux's Estate, 100 Cal. 609, 35 P. 345, 347, that: "The payments, however, not being authorized by a present order of the court, were made at their (the executors) peril, and to the extent that they were not approved by the subsequent order of the court constituted a wrongful use of the money of the estate * * *." However in the same estate, In re Lux's Estate, 100 Cal. 606, 35 P. 345, the court said: "In the matter of paying a family allowance, 'the administrator is not required to wait for an order of court, but may make the necessary expenditures as the exigencies occur, and the court will allow such sums as may be reasonable in the settlement.' " The court cites several cases.

We find then that the executor in this estate had the right to make payments to the widow without an order of the court after the return of the inventory and the only question is as to whether the amount paid by him to her is reasonable. The matter is largely in the discretion of the trial court. In re Coffin's Estate, 16 Cal. App. 2d. 532, 61 P. 2d. 81. No one claims that $150 per month was unreasonable. No objections whatever were made by anyone as to the payments made until the executor reported the sale of the so-called Swan land belonging to the estate and that he had paid the widow the sum of $12,150 as her portion thereof and asked that the widow's allowance be discontinued. That was in February 1949. The record

does not disclose that the widow had any money of her own. Apparently the amount paid was necessary for her subsistence until the money from the Swan land was paid to her. If an application by the widow had been made after the return of the inventory for an allowance to her, an order to that effect would undoubtedly have been made, and it would doubtless have read that it should be valid until the further order of the court. We think, in that event, no order would have been made cutting off the allowance until at least the time that the executor thought it should cease and had made objection to that effect. We hesitate to interfere with the trial court's discretion any more than necessary. But, in view of what we have said and in view of the absence of any objections on the part of anyone, we think the court should have made an allowance from the date of death of the deceased to the time when the objection was made by the executor, a period of four years and two months, or a total payment of $7,500, leaving the so-called overplus paid to the widow the sum of $4,650 instead of $9,450. And the court's order is hereby modified to that effect.

The court allowed interest on the overplus as already mentioned. The money over and above the $7,500 may be said to have been paid by mistake. Interest is not ordinarily charged on such payments until after the discovery of the mistake. 47 C.J.S. 23, § 11. We are unable to see how it can be said that any discovery of a mistake took place until the trial court determined in its final decree as to what was reasonable for a widow's allowance, and no amounts were paid to the widow in this case after that time. It was held in In re Lux's Estate, 100 Cal. 609, 35 P. 345, 347, that interest was allowable. In that case, the widow herself was executrix of the estate, and the court allowed the interest in that case on the theory that a trustee should

not be permitted to divert property to her own use. The widow in the instant case is not the executrix and the reason of the rule of the California case ceases. We might add moreover that the widow might have been paid the overplus of $4,650, above mentioned, as part of her distributive share of the estate, at least by an order of the court. It is clear she would not have been charged any interest in that case.

We conclude on this phase of the case that the widow should be charged with an overplus of only $4,650 instead of $11,661.95 as ordered by the court.

4. It is contended by the testator's children that the widow who elects to take against the will is not entitled to any profits or increments of the estate after the testator's death, and that the court erred in giving her a share thereof. We are unable to agree with the contention. She retained her interest in the estate until her share was set off to her. And we can conceive of no valid reason why she should not benefit by the increment and profits accruing until that time the same as the children. And as we read the authorities, they all so hold in so far as the general assets of the estate are concerned. In re Schnitzer's Will, 118 N.Y. S. 2d. 779; I nre Gidding's Estate, 198 Misc. 536, 99 N.Y.S. 2d. 368; In re Curley's Estate, 160 Misc. 844, 290 N.Y.S. 822; In re Byrnes' Estate, 149 Misc. 449, 267 N.Y.S. 627; Barlow v. Winters Nat. Bank & Trust Co., 145 Ohio St. 270, 61 N.E. 2d. 603, 160 A.L.R. 423. In 16 Am.Jur. 874, § 100, it is said: "Since the interest of a surviving spouse vests immediately on the death of the deceased spouse, increment or depreciation of that interest is computed from that date according to the rate of increment or depreciation of the estate between the death and the assignment of the share. It follows that if at that date the interest to which the surviving spouse is entitled is the whole of the estate,

he or she takes the whole increment or depreciation as the case may be." See also 26 C.J.S. 1103, § 70. We can see no difference in the rule applicable herein whether the widow took under the statute of wills or where the deceased died intestate.

It would seem to be clear the increment or profits of the general assets of the estate consists of the difference between the amount on hand for distribution (including the specific devises to the children and the amounts already distributed before the final decree herein) and the appraised value of the estate as of the time of death of the deceased. The appraised value was according to the decree $212,080.60. The value at the time of the final decree herein consists of the specific devises to the children, the so-called Swan Land, and (after paying a large amount of taxes and expenses) the amount still to be distributed was, according to the figures used by the trial court, the sum of $273,815.81. The increment or profits would, accordingly, consist of the difference of these figures. To determine the respective interests of the parties herein, according to the rule above mentioned, it is only necessary to take the last figure above mentioned, assuming it to be correct and add, however, to the widow's interest her homestead right, and deduct it from the interest of the children.

5. It is contended by the counsel for the children that the widow is not entitled to any share of the rentals of the specifically devised lands to the testator's children. That appears to be correct. It is said in an annotation in 116 A.L.R. 1133: "Unless a contrary intention appears from the will, a specific devisee of land is entitled to the rents and profits accruing from the land from the time of the death of the testator, and not from any later period." There is nothing to the contrary appearing in the will in question here.

We cannot be certain, in so far as the record before us is concerned, as to whether or not the testator's children or some of them have been charged with any rentals as contended. All we can say accordingly on that point is, that if it should hereafter appear that such rental has been charged, correction should be made accordingly to the rule above mentioned.

6. Aside from what we have said, we think the court correctly distributed the property of the estate. Counsel for the children argue that under the decree, the widow would receive more than one-fourth of the estate. We do not find it so as hereafter shown. The court in items A, B, and C, on page 11 of the court's decree, as already stated, distributed specific property to the widow, namely land and interest in stock and oil leases and minerals, and there can be no mistake in that. In item D, the court gave her one-fourth of all personal property, consisting of cash, bonds, stock and accounts receivable. The court stated that to be of the value of $117,232,36. Counsel argue that they could not find out how the court arrived at that result. Neither can we. As far as we can see, and as shown on pages 7 and 8 of the court's decree, there was personal property on hand only as follows: Bonds $66,000; Owjhyee Stock $540.75; and accounts receivable, also including cash, in the amount of $33,414.02, making a total of $99,954.77. In connection with the accounts receivable on page 8 of the court's decree, there is an item—apparently a credit item—of $7,903.61 in favor of Charlotte Rosenlieb, and this item is deducted from the total of the accounts receivable. Yet she was directed, on page 14 of the decree to pay it. No explanation of this item has been pointed out, and what, if any bearing it has on the final computations is not known to us, and must be corrected, if correction is needed, by the executor, the parties or the trial court.

We mention it merely so it may be understood that we have not overlooked it.

The parties seem to be agreed that the widow is entitled to the statutory homestead right and the household goods, in addition to her one-fourth interest in the estate. At least no exception is taken to the court's decree to that effect.

In item E on page 12 of the court's decree, the widow is given one-fourth of the net profits of the estate. That item is repeated in item F. As we have heretofore stated the increment or profits of the general estate consisted of the difference between the amount on hand for distribution plus the value of the specific devises to the children and the amount of the appraised value as of the death of the testator and that the widow is entitled to her share of the increment. The total estate for distribution (including the specific devises to the children) amounts, according to the figures taken by the trial court, to $273,815.81, as shown hereafter. So items D, E, and F, mentioned in the court's decree on pages 11 and 12 thereof, may be combined and simplified and item F may be taken to read that the widow should have one-fourth of the net appraised value of the estate plus one-fourth of the increment or profits, less the amount and property specifically distributed to her in items A, B, and C.

As stated before, there are no difficulties in connection with the specific property distributed, including general mineral rights. The only difficulty that could arise is as to how the property, consisting of bonds, cash and accounts receivable should be distributed. We may leave out of account the $375 household goods, since, as conceded by the parties, that belonged to the widow, aside from her other interest. To show that the widow, under the decree will receive only her

proper portion of the estate, we shall take the figures used by the court and doing so we arrive at the following results.

The total estate at the time of the court's decree, including the amount which the court found was available for distribution was, using the figures of the trial court, as follows:

| | | |
|---|---|---:|
| Specific devises to the children | | $50,239.72 |
| Swan land | | 50,000.00 |
| Amount shown still available for distribution | · | 173,576.00 |
| (Page 8 of the court's decree) | | 173,576.00 |
| Total Estate | | $273,815.81 |

| | | |
|---|---:|---:|
| The widow is entitled to one-fourth of the total estate | $ 68,453.95 | |
| Plus homestead rights | 2,500.00 | |
| Total due widow | $ 70,953.95 | |

| | | |
|---|---:|---:|
| The widow received: | | |
| Land, specifically devised | $ 12,534.66 | |
| One-fourth interest in Murray land | 5,271.66 | |
| One-fourth of oil leases | 10,000.00 | |
| One-fourth of Swan land | 12,500.00 | |
| Total received | $40,306.32 | |
| Total received subtracted from total due widow | | 40,306.32 |
| Leaves | | 30,647.63 |
| Deduct overplus in widow's allowance | | 4,650.00 |
| Widow's remaining interest | | $ 25,997.63 |

| | | |
|---|---:|---:|
| The children are entitled to three-fourths of the total estate | | $205,361.86 |
| Less homestead rights | | 2,500.00 |
| Total due | | $202,861.86 |

The children received:

| | | |
|---|---|---|
| Land specifically devised | $50,239.72 | |
| Three-fourths of Swan land | 37,500.00 | |
| Three-fourths of oil leases | 30,000.00 | |
| Three-fourths of Murray ranch | 15,815.00 | |
| | | |
| Total received | $133,554.72 | |
| Total received subtracted from total due children | | 133,554.72 |
| Leaves | | $69,307.14 |
| Add overplus of widow | | 4,650.00 |
| | | |
| Children's remaining interest | | $ 73,957.14 |
| Remaining interest of children | $73,957.14 | |
| Remaining interest of widow | 25,997.63 | |
| | | |
| Total remaining interest | $99,954.77 | |

The total remaining interest should correspond to the amount of personal property consisting of cash, bonds and accounts receivable ready for distribution as mentioned on pages 7 and 8 of the court's decree. It does so correspond. The personal property consists of:

| | |
|---|---|
| Government Bonds | $66,000.00 |
| Owjhyee Chemical Products Company Stock | 540.75 |
| Accounts receivable as shown on page 8 of decree | 33,414.02 |
| | |
| Total | $99,954.77 |

The foregoing computation is based upon the figures used by the trial court in its final decree. The actual amount on hand, when the final distribution is made, will, of course, be somewhat different from that shown in the figures used by the court heretofore, at least in the amount of cash on hand and perhaps also in the amount of interest on bonds. The accounts receivable on hand will also be less if they contain any items of rental charges on the specific devises. If they do, that should be corrected as heretofore stated.

The court in computing the amount of accounts receivable on hand included therein the sum of $14,162.82 as rent due from Bryan White. As we understand it, this account is in dispute. The executor refused to receive the tenders made as not sufficient, so that no amount of such rental is actually in the hands of the executor. A specific distribution of these rentals was made by the court on page 18 of the decree, namely one-fourth to the widow and three-fourths to the children. That distribution is approximately just, the amounts thereof to be determined in the future. So this rental may as well be eliminated from the distribution hereafter to be made by the executor.

Supposing then, with these corrections made and merely to illustrate the manner of distribution, that the total amount of cash, bonds, and accounts receivable on hand amounts to $80,000 instead of $99.954.77, the amount to be paid to the widow would be as folows:

| | |
|---|---|
| Children's specfic devises | $50,239.72 |
| Swan land | 50,000.00 |
| Amount left for distribution ($173.576.09 less $19,954.77) | 153,621.32 |
| Total estate | $253,861.04 |
| | |
| One-fourth of the total estate | 63,465.26 |
| Homestead rights | 2,500.00 |
| Total due widow | $ 65,965.26 |
| Widow has received | 40,306.32 |
| Leaving due | $ 25,658.94 |
| Deduct overplus above mentioned | 4,650.00 |
| Leaving to be distributed to the widow in the event supposed | $ 21,008.94 |

Figuring the interest of the children in this event in like manner, it would leave them $58,991.06 which added to the widow's interest makes a total of $80,000. In addition the parties would, of course be entitled to their respective interest in the Bryan White rental and the mineral and other rights not included in the existing oil lease. There may be a simpler way of figuring the amounts due to the respective parties, but we have found none.

The foregoing illustrates the final distribution to be made. With the modifications indicated in this opinion, the decree of the trial court is affirmed. And the court may make any further and necessary order to effectuate a proper distribution of the property of the estate, including any correction in the figures and computations which have been made by this court, if the trial court finds such correction should properly be made, since the computations made by this court have been made mainly for the purpose of illustration only so as to aid in the ultimate computations to be made.

*Affirmed as modified.*

RINER, J. AND HARNSBERGER, J., concur.